## Case No. 18,213.
### ZEREGA et al. v. POPPE et al.
#### [Abb. Adm. 397.] 1

District Court, S. D. New York.　Jan., 1849.

BILL OF LADING—CONTRADICTION BY PAROL—IN-
SUFFICIENT PACKING.

1. Under a bill of lading which acknowledges the receipt of goods for transportation in good order, the carrier may, notwithstanding, show, in case of injury to the goods, and as against the owner of them, that it was occasioned by insufficiency in the cask, case, &c., in which they were packed, and not by any negligence or misfeasance upon his part.

[Compare, also, on the right to explain a bill of lading, Manchester v. Milne, Case No. 9,-006; Goodrich v. Norris, Id. 5,545; Baxter v. Leland, Id. 1,124.]

2. But the law presumes that the goods were delivered to the carrier in the condition specified in the bill of lading; and the burden of proof lies upon the carrier to rebut this presumption.

3. It is not sufficient, in case of damage to goods received under such a bill, for the carrier to show that the goods were delivered to him in insufficient packages, and that the defect was not discoverable by him. He must also show that the loss actually resulted from such insufficiency, and from no fault of his.

[Cited in Kennedy v. Dodge, Case No. 7,701.]

This was a libel in personam, by Augustus Zerega, Thomas Andrews, and Isaiah C. Whitmore, owners of the ship James H. Shepherd, against Edward Poppe and Theodore Poppe, to recover the freight of thirty-two casks of linseed oil, shipped on board the James H. Shepherd, at Antwerp, and consigned to the defendants at this port. The goods were shipped under a bill of lading, in French, of which the following is a translation: "I, J. Ainsworth, captain of the American ship James H. Shepherd, at present at Antwerp, bound for New York, acknowledge to have received on board my said ship, in good order, from Messrs. F. & J. Badart Frères, thirty-two casks of linseed oil, containing together twenty thousand and sixty-three litres, which I bind myself to deliver at the said place, well-conditioned, excepting the perils of the sea, to order, they paying me for freight two American cents per gallon, and no more; for the accomplishment of which I bind myself, my property, and my said ship, freight and equipment, and have signed four receipts of the same tenor and of one effect. Done at Antwerp, March 10, 1848. Contents unknown—not accountable for leakage. James Ainsworth."

Thirty-one of these casks of oil were safely delivered to the respondents, the consignees, in New York. The other cask was found, on unlading, to have been broken, and its contents had escaped. The consignees, considering that the value of the oil lost, including duties paid upon the lost oil, as a part of the invoice, exceeded the amount due for freight, and that the carriers were liable for the loss, refused to pay the charges for

freight, and this suit was accordingly brought by the ship-owners, to recover it. The amount claimed was $89.20. Other facts appear in the opinion.

Mortimer Porter, for libellants.
Edgar Logan, for respondents.

BETTS, District Judge. This action is by the owners of the ship James H. Shepherd, to recover the freight of thirty-two casks of linseed oil from Antwerp to New York. Thirty-one of these casks were delivered to the defendants, as consignees. One cask, of the capacity of two hundred and six gallons, was found, on discharging the vessel, to be broken, and its contents had leaked entirely out. The value of the oil lost, including sixteen dollars duties paid upon it by the consignees, exceeds, it is contended, the amount of freight stipulated for the transportation of the thirty-one casks. And the question between the parties is, upon which this loss. shall fall.

The liability of the ship-owners is fixed prima facie by the bill of lading, as between the parties to it; and considering the defendants to have no other rights than those of the owners of the goods shipped, the burden is on the respondents to show an adequate excuse for not delivering the entire cargo, conformably with the terms of the bill of lading. Abb. Shipp. 323; Curt. Merch. Seam. 169. The acknowledgment by the bill of lading that the cargo was received in good condition is prima facie evidence that, so far as indicated by the external appearance of the casks, it was in good order when laden on the ship. It is not, indeed, conclusive upon the libellants. They are at liberty to show that the loss resulted from inherent insufficiency or concealed defects in the cask, or other facts constituting an adequate cause for its breakage, without fault or negligence on their part. It, however, devolves upon them to supply satisfactory proof that the admission made in the bill of lading is inaccurate, and that this cask was not received by the ship in good condition.

The exculpation set up is, that the cask, when sent to the ship, was rotten and insufficient to bear the weight of oil in it, and the handling necessary for lading and unlading it. Such defects of the cask, not discernible to the carrier on an ordinary examination, will undoubtedly relieve him of responsibility in case of the loss of its contents in the course of transportation. Story, Bailm. § 492. But this insufficiency of the package, and the fact that it was the cause of the loss, must be proved. It is not to be presumed from the circumstances that the goods were not safely delivered. The libellants have undertaken to establish the fact, by proving the broken cask was in appearance old, decayed. and rotten; and from that condition of infirmity. they contend the leakage was owing to the insufficient state of the cask, and not

to any negligence or improper act of the master or crew.

It is not necessary to consider the pertinency and weight of those suppositions and inferences, for the libellants have not succeeded in showing that the injury to the cask did actually arise from its insufficiency to sustain the ordinary treatment of lading and stowage on board. Several respectable and intelligent witnesses have been examined, who express the opinion, that from the present state and appearance of the broken stave, it would not have borne rolling over a stone or other hard substance, in getting it to the ship, or being let down heavily on dunnage of wood in the course of stowage. The stave was crushed inwardly near the bilge. The fracture was manifestly caused by the cask encountering a sudden shock or pressure. The ligaments of the stave are severed by being driven inwardly in a splintered state, but held in contact without being actually broken short off. Some of the witnesses inferred this appearance of the fracture was caused by prying the cask with a lever of iron or other hard material, in endeavoring to lift it or move it in stowing; but all agree that the break could not result merely from the resting of the cask on its bed and supporters, in the manner the evidence shows it was dunnaged on board. This testimony displaces all ground of presumption that the breakage arose from any inherent defect of the cask. The opinion of all the witnesses and the exhibition of the stave, demonstrates that the fracture must have been produced by considerable external violence, and could not result from the working of the cask in its place on board.

Admitting, then, that the shippers were bound to supply casks of strength sufficient to bear the ordinary usage in stowing, it is incumbent upon the libellants to prove that this one came to the ship in a broken state, or in such condition that the loss befel it without any act of carelessness on their part. The call upon them to make this proof is pertinent and the more stringent, as it appears that, before the cargo was exposed to sea-perils, the pumps threw up oil from the hold, and on examination of the stowage at the time, this cask was found empty. The strong presumption upon the evidence is, that the injury happened in lading the cask on board, while it was under the responsibility of the respondents.

It is to be remarked, that the opinions of witnesses respecting the inherent defectiveness of the cask are strongly contradictory, and the indirect evidence from that source must be received with great caution. Many coopers and others, experienced in this business, pronounce the cask a sound and sufficient one for the transportation of oil. Some consider its long use as a whale-oil cask tended to strengthen it, and that it was at that time as sufficient to carry linseed oil as when new, whilst others considered its long service had softened and enfeebled the stave so as to destroy its tenacity. Those who carefully inspected the stave, and picked the fibres of wood in presence of the court, disagree in their opinions whether there was any decay or want of strength in it. The weight of evidence in point of numbers is, in that respect, with the respondents.

I think the libellants have failed to prove that the loss of the oil in this case was owing to the defectiveness and insufficiency of the cask, and the respondents, on their part, have proved no more than that it was carefully and safely stowed, and that the fracture cannot reasonably be ascribed to improper stowage; that, however, does not satisfy the bill of lading, nor excuse them from delivering the entire cargo.

The decree must accordingly be, that the value of the oil be deducted and allowed the respondents against the demand of the libellants for freight. If the parties do not agree between themselves in the adjustment of the amount, let a reference be taken to a commissioner to state it. If the loss equal in amount the freight, a decree will be entered dismissing the libel, with costs; if a balance remains payable to the libellants, they will take a decree for the amount, with costs.